William L. MANION, M.D., Plaintiff–Appellee,

v.

George EVANS, M.D., Defendant,

Lima Memorial Hospital and Gregory Turner, Defendants–Appellants.

No. 92–3313.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 1, 1992.

Decided Feb. 26, 1993.

Richard M. Kerger, Marshall & Melhorn, Toledo, OH, Charles William Bair (argued and briefed), Wagoner, Steinberg, Chinnis & Dorf, Holland, OH, for plaintiff-appellee.

Michael J. Malone (briefed), Julie A. Davenport, Oxley, Malone, Fitzgerald & Hollister, Findlay, OH, Eric Springer (briefed), Barbara Blackmond (argued and briefed), Horty, Springer & Mattern, Pittsburgh, PA, for defendants-appellants.

Catherine M. Ballard (briefed), James J. Hughes, Bricker & Eckler, Columbus, OH, amicus curiae Ohio Hosp. Ass'n, American Hosp. Ass'n.

Russell Iungerich (briefed), Los Angeles, CA, amicus curiae The Semmelweis Society.

Kimberly S. Davenport, California Medical Ass'n, San Francisco, CA, amicus curiae American Medical Ass'n, California Medical Ass'n, Ohio State Medical Ass'n.

Before: NORRIS and SILER, Circuit Judges; and EDGAR, District Judge.[*]

ALAN E. NORRIS, Circuit Judge.

Defendants Lima Memorial Hospital and its president, Gregory Turner, appeal the district court's denial of summary judgment in plaintiff Dr. William L. Manion's antitrust action based upon the theory of bad faith peer review. The district court held that there was a genuine issue of material fact regarding whether the Health Care Quality Improvement Act, 42 U.S.C. §§ 11101–11152, shielded defendants from liability. Because we conclude that the decision denying defendants' motion for summary judgment is not an appealable order, we dismiss the appeal.

I.

The early 1980s witnessed a new trend in health care litigation as states and health care accrediting bodies stepped up their promotion of peer review—the process by which physicians judge the competence of their fellow professionals and recommend disciplinary action for those found dangerously incompetent. As this process gathered force, physicians aggrieved by the results of peer review increasingly appeared in federal court claiming that the actions of their peers were anti-competitive and violated federal antitrust laws. Although hospitals and peer review participants generally prevailed in these lawsuits, the victories entailed costly and time-consuming litigation.

Congress attempted to remedy this situation in 1986 by enacting the Health Care Quality Improvement Act (HCQIA), 42 U.S.C. §§ 11101–11152. In the Act itself, Congress explained the purposes behind this particular piece of legislation:

The Congress finds the following:

(1) The increasing occurrence of medical malpractice and the need to improve the quality of medical care have become nationwide problems that warrant greater efforts than those that can be undertaken by any individual State.

(2) There is a national need to restrict the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance.

(3) This nationwide problem can be remedied through effective professional peer review.

(4) The threat of private money damage liability under Federal laws, including treble damage liability under Federal antitrust law, unreasonably discourages physicians from participating in effective professional peer review.

(5) There is an overriding national need to provide incentive and protection for physicians engaging in effective professional peer review.

42 U.S.C. § 11101.

The Act creates a form of protection from liability in damages for hospitals and peer review participants. Although it never actually uses the term "immunity," the Act provides that if a "professional review action" meets the Act's standards, the peer reviewers "shall not be liable in damages under any law of the United States or of any State ... with respect to the [profes-

---

[*] The Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennessee, sitting by designation.

sional review] action." 42 U.S.C. § 11111(a)(1).

To be entitled to this protection, peer reviewers must satisfy the four "standards" or conditions precedent provided in § 11112(a). That section requires that professional review action be taken:

(1) in the reasonable belief that the action was in the furtherance of quality health care,

(2) after a reasonable effort to obtain the facts of the matter,

(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and

(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts....

42 U.S.C. § 11112(a). The review action is presumed to have met these standards "unless the presumption is rebutted by a preponderance of the evidence." *Id.*

## II.

In 1988, peer reviewers at Lima Memorial Hospital, acting on allegations of incompetency, suspended the clinical privileges of plaintiff, a pathologist at the hospital. After exhausting in-house appeals, plaintiff sued the hospital, its president, and the hospital's other pathologists in federal court, raising alleged antitrust violations and numerous state-law causes of action. The appealing defendants moved for summary judgment on the basis that they are immune from suit under HCQIA. The district court denied the motion because it concluded that there was a genuine dispute concerning whether defendants complied with the standards found in § 11112(a). It is that order from which defendants appeal.

## III.

Plaintiff asserts that this court lacks jurisdiction to hear the appeal because the district court order is not appealable. Since, as a general rule, denial of summary judgment is not a final order under 28 U.S.C. § 1291, *Switzerland Cheese Ass'n v.*

*E. Horne's Market, Inc.,* 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966), the district court's decision must fit within the collateral order exception to the finality requirement of § 1291 in order to be appealable. *See Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The decision must "finally determine claims of right separable from, and collateral to, rights asserted in the action." *Id.* at 546, 69 S.Ct. at 1225–26.

■ To come within the collateral order exception, an order must:

[1] conclusively determine the disputed question[;]

[2] resolve an important issue completely separate from the merits of the action[;] and

[3] be effectively unreviewable on appeal from a final judgment.

*Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (refining *Cohen* test). An order is effectively unreviewable on appeal from a final judgment when it involves an asserted right the practical value of which would be destroyed if it were not vindicated before trial. *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 800, 109 S.Ct. 1494, 1498, 103 L.Ed.2d 879 (1989).

Relying upon this rationale, the Supreme Court has allowed immediate appeals from orders denying qualified immunity to public officials in actions brought by citizens alleging violations of rights guaranteed by the Constitution. Qualified immunity is *"immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). This "right not to *stand trial," id.,* has been considered essential by the Supreme Court when it was asked to apply the collateral order exception in other contexts. In *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Court concluded that denial of a motion to dismiss an indictment on double jeopardy grounds was immediately appealable, since the de-

fendant was "contesting the very authority of the Government to hale him into court." *Id.* at 659, 97 S.Ct. at 2040. *See also Helstoski v. Meanor,* 442 U.S. 500, 508, 99 S.Ct. 2445, 2449, 61 L.Ed.2d 30 (1979) (speech or debate clause designed to protect members of Congress "not only from the consequences of litigation's results but also from the burden of defending themselves.").

On the other hand, orders denying rights that do not include protection from burdensome litigation are not immediately appealable. For example, the denial of a motion to dismiss based upon an extradited person's immunity from civil process is not immediately appealable because the "right not to be burdened with a civil trial itself is not an essential aspect of this protection." *Van Cauwenberghe v. Biard,* 486 U.S. 517, 525, 108 S.Ct. 1945, 1951, 100 L.Ed.2d 517 (1988). In *Van Cauwenberghe,* the Court underscored the narrow scope of the collateral order exception:

> The critical question, following Mitchell, is whether "the essence" of the claimed right is a right not to stand trial. This question is difficult because in some sense, all litigants who have a meritorious pretrial claim for dismissal can reasonably claim a right not to stand trial. But the final-judgment rule requires that except in certain narrow circumstances in which the right would be "irretrievably lost" absent an immediate appeal, litigants must abide by the district court's judgments, and suffer the concomitant burden of a trial, until the end of proceedings before gaining appellate review.

*Id.* at 524, 108 S.Ct. at 1950 (citations omitted). *See also Lauro Lines S.R.L. v. Chasser,* 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989) (order denying motion to dismiss on basis of forum selection clause not immediately appealable).

Moreover, the Supreme Court has warned lower courts to exercise restraint when considering whether a particular right includes protection from the exigencies of trial. "One must be careful ... not to play word games with the concept of a 'right not to be tried.' ... A right not to be tried in the sense relevant to the *Cohen* exception rests upon *an explicit statutory or constitutional guarantee that trial will not occur.*" *Midland Asphalt Corp.,* 489 U.S. at 801, 109 S.Ct. at 1499 (emphasis added) (order denying motion to dismiss indictment due to government's disclosure of matters before grand jury not immediately appealable). *See also Marrical v. Detroit News, Inc.,* 805 F.2d 169 (6th Cir. 1986) (narrow language of Michigan courts in describing that state's qualified immunity results in protection only from liability, not from suit; order not immediately appealable).

## IV.

■ With this case law in mind, we turn to HCQIA to determine whether the Act includes a right not to stand trial, in which case the district court's decision would be immediately appealable, or whether it offers only protection from liability for damages, which would not support an immediate appeal. We initially point out that the Act does not label its protection an "immunity from suit." Instead, § 11111(a)(1) provides that if a professional review action meets the Act's standards, the peer review participants "shall not be *liable in damages.*" 42 U.S.C. § 11111(a)(1) (emphasis added). Significantly, an earlier version of this section provides that the professional review body *"shall not be subject to an action* or [be] liable under any ... law." H.R. 5110, 99th Cong., 2d Sess. (1986), *reprinted in The Health Care Quality Improvement Act of 1986: A Legislative History,* at 196 (Bernard D. Reams ed. 1990) (emphasis added). The above-quoted italicized portion was deleted during committee consideration.

The House Committee on Energy and Commerce includes an explanation for the revision in its report of September 26, 1986:

> The purpose of this legislation is to improve the quality of medical care by encouraging physicians to identify and discipline other physicians who are incompetent or who engage in unprofessional behavior.

Under this bill, hospitals and physicians that conduct peer review will be protected from damages in suits by physicians who lose their hospital privileges, provided the peer review actions meet the due process and other standards established in the bill....

. . . .

To assure that the medical profession cooperates in this system, the Committee believes it is essential to provide some legal immunity to doctors and hospitals that engage in peer review activities....

. . . .

... Doctors who are sufficiently fearful of the threat of litigation will simply not do meaningful peer review. The result would be to continue the possibilities for abuse by bad doctors.

Thus, there is a clear need to do something to provide protection for doctors engaging in peer review.... To that end, the bill provides limited, but essential immunity. Doctors and hospitals who have acted in accordance with the reasonable belief, due process, and other requirements of the bill are protected from damages sought by a disciplined doctor....

. . . .

SECTION–BY–SECTION ANALYSIS

. . . .

*Title I—Promotion of professional review activities*
*Section 101*

Precludes damages against professional review bodies and persons taking professional review actions that meet the standards defined in section 102.

. . . .

DISCUSSION: COMMITTEE VIEWS

. . . .

Subsection (a) provides limited, but essential, protection from liability for persons conducting professional review actions based on the competence or professional conduct of individual physicians. To qualify for the protection, the professional review action must meet the standards specified in section 102(a) and must be an action as defined in section 301(9). If those criteria are met, the persons engaging in or assisting in the conduct of professional review action shall not be liable in damages with respect to the action.

The Committee feels that the purposes of this bill require protection for persons engaging in professional review. Under current state law, most professional review activities are protected by immunity and confidentiality provisions. A small but growing number of recent federal anti-trust actions, however, have been used to override those protections. Because the reporting system required under this legislation will most likely increase the volume of such suits, the Committee feels that some immunity for the peer review process is necessary.

Initially, the Committee considered establishing a very broad protection from suit for professional review actions. In response to concerns that such protection might be abused and serve as a shield for anti-competitive economic actions under the guise of quality controls, however, the Committee restricted the broad protection. As redrafted, the bill now provides protection only from damages in private actions, and only for proper peer review, as defined in the bill. The bill leaves completely intact the jurisdiction of the Federal Trade Commission, the Justice Department, and State Attorneys General to bring antitrust actions. In addition, the bill does not restrict the rights of physicians who are disciplined to bring private causes of action for injunctive or declaratory relief. If the professional review actions being challenged fail to meet the standards of section 102(a), no immunity is provided and the suit can be tried without regard to the provisions of this bill.

H.R.Rep. No. 903, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 6287, 6384–6391. The Court of Appeals for the Tenth Circuit views this legislative history as persuasive evidence that HCQIA's protection is immunity from liability only

and that orders denying motions to dismiss based upon HCQIA are not immediately appealable. *Decker v. IHC Hospitals, Inc.,* 982 F.2d 433 (10th Cir.1992).

The congressional committee's rejection of the earlier version's "very broad protection from suit" supports the conclusion that the protection ultimately enacted is only from liability for damages, not from suit. However, the language quoted above from the committee report, when read in its entirety, sends mixed signals. For example, imprecise terms such as "protected from damages in suits by physicians," "some legal immunity," "limited immunity," "precludes damages," "protection from liability," and "not liable in damages" are used interchangeably. Furthermore, since the government entities are said to be able "to bring ... actions," and even disciplined physicians still can "bring private causes of action for injunctive or declaratory relief," it would seem by implication that what the Act prohibits is the ability of disciplined physicians to bring suit for damages. Under that interpretation, the Act would establish more than just a guarantee against having to pay a judgment; it would offer peer reviewers protection from having to defend private damage claims at all. The committee's use of the language "the bill now provides protection only from damages in private actions" is not inconsistent with this understanding, when it is read in the context of the entire portion quoted from the report. Moreover, during hearings committee members and witnesses often referred to "immunity from monetary damage actions" or "immunity from damage claims." [1]

If parsing this legislative history leads to the conclusion that Congress intended that peer reviewers could be subject to suit by government agencies, but that private actions against them be limited to suits for injunctive and declaratory relief, then one could argue that the statute conferred upon peer reviewers some form of hybrid immunity from suit. Immunity from suit in actions for damages brought by disciplined physicians at least would be consistent with the Act's policy of encouraging robust peer review.

On the other hand, the existence of limited immunity from suit only in a class of damage claims increases the potential for piecemeal appeals, since a successful appeal of an order denying that immunity would not necessarily conclude the proceedings, as injunctive and declaratory claims could remain.[2] Accordingly, we should not rush to conclude from the less than precise language used in the report and by witnesses before the committee that there was a clear legislative intent to create such a hybrid immunity from suit.

The policy that the Act announces in its findings refers only to protection from damages. "The threat of private money damage *liability* under Federal laws, including treble damage *liability* under Federal antitrust law, unreasonably discourages physicians from participating in effective professional peer review." 42 U.S.C. § 11101(4) (emphasis added). The findings make no mention of the threat of protracted litigation, and are consistent with the narrow language of § 11111(a)(1), that peer reviewers "shall not be liable in damages."

**1.** *Hearings on H.R. 5540 Before the Subcomm. on Civil and Constitutional Rights of the House Judiciary Committee,* 99th Cong., 2d Sess. (1986) (letter from Justice Department; statement of Rep. Edwards), *reprinted in The Health Care Quality Improvement Act: A Legislative History,* at 30, 93 (Bernard D. Reams ed. 1990). One witness objected that the quality care and due process standards the hospital must satisfy to get the protection would merely "add more legal issues for both sides to bounce around on moving to dismiss the damage counts." *Id.* (statement of Arthur Lerner, Michael & Wishner, P.C., Washington D.C.), *reprinted in* Reams, *supra,* at 98–99. While this was only the comment of one witness, it suggests an assumption that

the Act would allow summary dismissals of the damage claims.

**2.** We recognize that this threat of piecemeal appeals also exists in the context of public official qualified immunity, since there is no qualified immunity from declaratory or injunctive actions. *Spruytte v. Walters,* 753 F.2d 498, 510 (6th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986). However, the Supreme Court has stressed that the protection from damages for public officials is so important that it justifies this risk. *See generally Mitchell,* 472 U.S. 511, 105 S.Ct. 2806. Without any indication from Congress that HCQIA's safeguards are equally essential, we refuse to accept that risk here.

In sum, we are unable to find in HCQIA's grant of statutory protection the kind of *explicit* guarantee that trial will not occur that is demanded by Supreme Court case law. *See Midland Asphalt,* 489 U.S. at 801, 109 S.Ct. at 1499. The language of HCQIA does not announce clearly that the essence of the protection it grants is the right not to stand trial. To be sure, one can discern from the legislative history a generalized concern by Congress that peer reviewers should not be required to respond in damages. Unfortunately, neither in the legislative history nor in the language it drafted did Congress clearly point out whether its response to that concern was a grant of immunity from suit or the grant of a mere defense to liability for an award of damages. We are then left to conclude that all the statutory language accomplishes with certainty is to shield peer reviewers from liability for payment of damages. In view of the Act's narrow language, the ambiguous legislative history, and the strong policy against piecemeal appeals, we conclude that the Act does not confer a right not to stand trial, and that the district court's order declining summary judgment is therefore not immediately appealable.

V.

The appeal is dismissed.