Roland IMPERIAL, M.D.,
Plaintiff–Appellant,

v.

SUBURBAN HOSPITAL ASSOCIATION, INCORPORATED; Medical Staff of Suburban Hospital of Bethesda, Maryland; Dr. John S. Saia; Dr. Daniel Powers; Dr. John Lord; Dr. John S. Eng; Dr. Joel Schulman; Dr. Charles Tennen, Defendants–Appellees,

and

Suburban Hospital Board of Trustees, Defendant.

No. 93–2477.

United States Court of Appeals, Fourth Circuit.

Argued May 11, 1994.

Decided Sept. 12, 1994.

**ARGUED:** Barry Jay Rosenthal, Bromberg, Rosenthal & Siegel, Rockville, MD, for appellant.  S. Allan Adelman, Godard, West & Adelman, P.C., Rockville, MD, for appellees.  **ON BRIEF:** Kenneth S. Golden, Bromberg, Rosenthal & Siegel, Rockville, MD, for appellant.

Before NIEMEYER, Circuit Judge, PHILLIPS, Senior Circuit Judge, and ERWIN, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed by published opinion.  Judge NIEMEYER wrote the opinion, in which Senior Judge PHILLIPS and Senior District Judge ERWIN joined.

## OPINION

NIEMEYER, Circuit Judge:

When Roland Imperial, M.D., was denied reappointment to the medical staff at Suburban Hospital in Bethesda, Maryland, effective January 1, 1988, he filed this action against the Hospital and the doctors involved in its professional peer review activities.  Imperial is an internist who was granted privileges to practice medicine at Suburban Hospital in 1977.  Suburban Hospital denied Imperial's reappointment on the grounds that his professional activities did not meet the appropriate standards of care, finding deficiencies in record keeping, patient management, and work relationships with health care professionals at the Hospital.  In his amended complaint, Imperial alleged, in four counts, that (1) the Hospital's proceedings to deny him reappointment to the medical staff were had in bad faith and denied him due process by not providing adequate notice of the reasons for the Hospital's actions; (2) the Hospital's action restrained trade and "created a monopoly" in violation of the Sherman Act; (3) the Hospital breached an implied contract to comply with its own bylaws; and (4) the defendants tortiously interfered with contractual relationships between Imperial and his patients.  Imperial demanded $1 million in damages on each count and, on the first three counts, "restoration of [his] hospital privileges."

The defendants filed a motion for summary judgment, asserting immunities granted them under the Health Care Quality Improvement Act of 1986 (the "Health Care Improvement Act"), 42 U.S.C. § 11101, *et seq.*, and under its Maryland counterpart set forth in Maryland Health Occup. Code Ann. § 14–501 and Maryland Cts. & Jud. Proc. Code Ann. § 5–393.  From the district court's order entering summary judgment in favor of the defendants, Imperial appeals, and finding no error, we affirm.

### I

The Health Care Improvement Act was enacted in 1986 to improve the quality of medical care by restricting the ability of physicians who have been found to be incompetent from repeating this malpractice by moving from state to state without discovery of such finding. *See* 42 U.S.C. § 11101; H.R.Rep. No. 903, 99th Cong.2d Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 6384–6391. Toward this end, the Act establishes a national reporting system "to follow bad doctors from place to place," *id.* at 6385, and provides immunity from damages for persons participating in professional review activities. Under the national reporting system, insurance companies are required to report medical malpractice payments to the Secretary of Health and Human Services, 42 U.S.C. § 11131; boards of medical examiners are required to report sanctions imposed against physicians, 42 U.S.C. § 11132; and health care entities are required to report adverse professional review information, 42 U.S.C. § 11133. The Act also imposes a duty on hospitals to obtain information reported about any physician who applies for hospital privileges or employment, and to update such information every two years after hospital privileges are granted. 42 U.S.C. § 11135.

To assure that hospitals and doctors cooperate with the system and engage in meaningful professional review, Congress found it essential to provide qualified immunity from damages actions for hospitals, doctors, and others who participate in the professional review process. *See* 42 U.S.C. § 11101; H.R.Rep. 903, at 6385. Thus, 42 U.S.C. § 11101 provides that persons participating in professional review activities that meet the standards imposed by 42 U.S.C. § 11112 "shall not be liable in damages under any law of the United States or of any State (or political subdivision thereof)" with respect to the person's participation in such activities. The immunity also extends to persons providing information to professional review bodies. 42 U.S.C. § 11111(a)(2). The conditions for granting such immunity are set forth in 42 U.S.C. § 11112. That section provides, in relevant part:

For purposes of the protection set forth in [§ 11111(a)], a professional review action must be taken—

> (1) in the reasonable belief that the action was in the furtherance of quality health care,

> (2) after a reasonable effort to obtain the facts of the matter,

> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and

> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

The Health Care Improvement Act also provides that if a health care entity fails to participate in the national reporting system, the Secretary may, after conducting an investigation and hearing, publish the entity's name in the Federal Register. An entity whose name is so published may not receive the immunity provided by 42 U.S.C. § 11111 for a three-year period. *See* 42 U.S.C. § 11111(b).

Imperial contends that the defendants may not invoke the immunity granted by 42 U.S.C. § 11111 on two grounds: (1) there is evidence establishing a factual dispute about whether defendants' actions were taken in the *reasonable belief* that they were in furtherance of quality health care, and (2) the defendants failed to follow the reporting requirements imposed by 42 U.S.C. § 11133(a) and thereby lost their immunity by reason of § 11111(b). He also contends that this immunity does not cover his claim for injunctive relief and that the Maryland immunity statute should not be imposed retroactively. We will address these points in order.

### II

■ In support of his contention that immunity does not apply to the defendants' actions because their professional review action against him was not taken "in the reasonable belief that the action was in furtherance of quality health care," Imperial points

to the original memorandum of his department head, Dr. John S. Saia, the former chairman of medicine at Suburban Hospital, which initiated the proceedings with a recommendation against reappointment. Asserting it is "inconceivable" that the memorandum "could be deemed as being in furtherance of quality health care," Imperial points to the fact that the memorandum fails to note "formally" any deficiencies and fails to take into account a recent review of Imperial's patient care conducted by the Quality Assurance Committee of the Hospital, which showed that Imperial's patient care was, in Imperial's words, "for the most part" adequate and acceptable. Imperial also maintains that the other doctors reviewing his performance were not qualified to decide the medical issues because they did not practice in his field and, in any event, were biased against him.

From our review of the record, we conclude that the district court did not err in concluding as a matter of law that the defendants' actions were taken in the reasonable belief that they would further the quality of health care. The memorandum of Dr. Saia, on which Imperial so heavily relies, begins with a summary statement against reappointment of Imperial and the general reasons for such recommendation:

> Based on his quality assurance file, as previously submitted to your committee, and my personal knowledge from monitoring his patient care for the past two years, I cannot, in good conscience, recommend Dr. Roland Imperial for reappointment to the medical staff of Suburban Hospital because of inappropriate and inadequate patient care and poor clinical judgment.

In support of his recommendation, Dr. Saia then proceeds to list eight reasons, referencing most of them with particular medical records. The reasons—relating to Imperial's medical record-keeping, his inappropriate use of antibiotics, his unavailability to nurses and to medically necessary meetings, and his failure to learn or show improvement in patient care—all are grounded in legitimate health care quality concerns.

In addition to Dr. Saia's review, the questions about Imperial's competence were reviewed separately by the Medical Staff Credentials Committee and a Medical Staff Executive Committee. Both committees recommended independently that Imperial not be reappointed. Following the conclusions reached by these committees, Imperial requested and was given a hearing before a panel of peers. The hearing lasted ten hours over the course of three days, and based on evidence presented by Imperial and by the various doctors and professionals at the Hospital, the panel concluded unanimously that Imperial should not be reappointed. Thereafter, the Medical Staff Executive Committee, which reconsidered its recommendation, adhered to its original recommendation. With these various recommendations in hand, the Board of Trustees of Suburban Hospital, after hearing Imperial and his attorney's presentation addressed to it, voted unanimously (with some abstentions) not to reappoint Imperial to the Hospital's medical staff.

The process was lengthy and complete, and it appears that throughout the proceedings, every doctor's opinion about Imperial related to the issue of health care quality. Nowhere in the record can we find any suggestion that any issue, other than a legitimate health care quality concern, was presented or considered. The only evidence pointed out by Imperial to suggest that the issues went beyond health care quality, is Imperial's contention that Dr. Saia, during his testimony, gave as one of his reasons for recommending against reappointment the fact that Dr. Saia did not want to jeopardize his personal reputation. The actual testimony, however, makes clear that the concern was broader and was motivated by a concern about the level of care being provided by the department of medicine at Suburban Hospital. Dr. Saia testified:

> It was mainly all of these reasons [those referred to in Dr. Saia's memorandum recommending against reappointment] that I refused to put my reputation on the line as Chairman of the Department to recommend this physician to the Board saying that he met the standard of the rest of our physicians.

We reject Imperial's argument that this reasoning is not in furtherance of health care quality.

■ Imperial also contends that because panel members did not practice in his field, they were unqualified to sit in judgment of his practice, since they could not form a reasonable belief about the quality of his practice. While the record does reveal that panel members were not in the same field as Imperial, it does not necessarily follow that the panel members could not form reasonable beliefs regarding the general quality of health care. While some of the issues about Imperial's patient care might better be understood by a doctor in his field, most of the deficiencies articulated were common to the standard of care for the medical profession in general. But more importantly to the issue at hand, even if Imperial could show that these doctors reached an incorrect conclusion on a particular medical issue because of a lack of understanding, that does not meet the burden of contradicting the existence of a *reasonable belief* that they were furthering health care quality in participating in the peer review process.

■ The Health Care Improvement Act grants immunity to doctors engaging in peer review activities if the activities are, among other things, taken "in the reasonable belief that they are in furtherance of quality health care." 42 U.S.C. § 11112(a)(1). While the Act imposes the burden of establishing the initial conditions for immunity on the party asserting it, the Act creates a presumption that a professional review action complies with § 11112(a)(1). *See* 42 U.S.C. § 11112(a). Moreover, the Act does not require that the professional review result in an actual improvement of the quality of health care. Rather, the defendants' action is immune if the process was undertaken in the *reasonable belief* that quality health care was being furthered. The standard is an objective one which looks to the totality of the circumstances.

The record in this case establishes that the inquiry into Imperial's performance was focused on quality health care concerns, and we have found no evidence that Dr. Saia, or any other person participating in the review of Imperial, did not have the "reasonable belief" that what he was doing was addressing the quality of health care at the Hospital.

Accordingly, summary judgment was appropriate on the immunity question.

### III

■ Imperial next contends that Suburban Hospital may not invoke immunity because it did not comply with the reporting requirements imposed by 42 U.S.C. § 11133, and therefore under 42 U.S.C. § 11111(b), the immunity from damages liability does not apply. In making this contention, Imperial has misunderstood the provisions of 42 U.S.C. § 11111(b).

The protection against damages liability granted by 42 U.S.C. § 11111(a) does not apply to a "health care entity" if that entity's name is published by the Secretary in the Federal Register as one which has been found not to have complied with the reporting requirements of 42 U.S.C. § 11133. *See* 42 U.S.C. § 11111(b). And then the protection is lost prospectively, effective 30 days after publication, for a period of three years. *Id.*

We need not address the question whether Suburban Hospital failed to comply with the reporting requirements imposed by 42 U.S.C. § 11133, because there is no evidence in the record that the Secretary ever made a charge that Suburban Hospital failed to report as required by 42 U.S.C. § 11133. Similarly, there is no evidence that the Secretary conducted the investigation required by 42 U.S.C. § 11111(b) and concluded that Suburban Hospital failed to comply with 42 U.S.C. § 11133. Finally, there is no evidence that Suburban Hospital's name was ever published in the Federal Register pursuant to an adverse finding under 42 U.S.C. § 11111(b).

The conditions for a loss of immunity under 42 U.S.C. § 11111(b) are not demonstrated, and we reject Imperial's argument on this point as frivolous.

### IV

Imperial's final contention with respect to immunity under the Health Care Improvement Act is that the immunity protects defendants only from damages and not from injunctive relief. He notes that his amended complaint asks for "judgment against defen-

dants, individually and severally, in the amount of $1 million, plus costs and interests, plus *restoration of plaintiff's hospital privileges*." (Emphasis added). To support his conclusion, Imperial relies on the language of the Act specifying that persons involved in health care professional review activities "shall not be liable *in damages* under any law of the United States or of any state (or political subdivision thereof) with respect to the action" (emphasis added). *See also Manion v. Evans,* 986 F.2d 1036 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 71, 126 L.Ed.2d 40 (1993); *Decker v. IHC Hospitals, Inc.,* 982 F.2d 433 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3041, 125 L.Ed.2d 727 (1993).

Without addressing the scope of immunity provided by the Act, the defendants point out that Imperial's claim for injunctive relief in the complaint was never prosecuted and therefore never presented to and decided by the district court. They argue that the issue cannot now be raised for the first time on appeal. Moreover, they argue, a claim for injunctive relief could only be directed at Suburban Hospital, and not at the individual doctors who participated in the professional health care review activity.

■ Even though the Health Care Improvement Act was intended to provide incentives and protection for physicians engaging in effective professional peer review, *see* 42 U.S.C. § 11101(5), the actual protection given by the Act is limited to damages liability. The language of § 11111(a), providing that persons participating in the professional health care review activity "shall not be liable *in damages,* . . . with respect to the action," (emphasis added) is sufficiently clear, in our judgment, to end the inquiry. Nevertheless, any doubt can be dispelled by a review of the legislative history. The report of the Energy and Commerce Committee of the House of Representatives, to whom this bill was referred, explains the scope of the immunity afforded by the legislation as adopted:

> Initially, the Committee considered establishing a very broad protection from suit for professional review actions. In response to concerns that such protection might be abused and serve as a shield for anti-competitive economic actions under the guise of quality controls, however, the Committee restricted the broad protection. As redrafted, the bill now provides protection *only from damages* in private actions, and only for proper peer review, as defined in the bill.

H.R.Rep. 903, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 6384, 6391 (emphasis added). Clarifying further, the Report stated expressly that disciplined doctors could continue to bring "private causes of action for injunctive or declaratory relief." *Id.*

Our interpretation that the immunity granted by 42 U.S.C. § 11111(a) applies only to liability for damages is consistent with the conclusions reached by the other circuits that have considered the question. *See Manion* and *Decker, supra.*

■ While Imperial is correct in his assessment of the scope of immunity, his effort to preserve on appeal an initial claim for injunctive relief, after abandoning it below, cannot succeed. We can find no evidence of any effort by Imperial to obtain an injunction from the district court. No motion for injunctive relief was filed with the complaint or thereafter. Moreover, when the vitality of the complaint, in its entirety, was put to the test on an immunity defense, Imperial made no overture to the district court to suggest that he had a continuing interest in pursuing injunctive relief which would survive the immunity defense. Having made no such assertion, the district court had no reason to consider the contention that the claim for injunctive relief could not be dismissed. In short, while the complaint requests that Imperial have his privileges restored, that relief was never pursued even in the face of a motion to dismiss the entire complaint which included that relief. Because the prayer for injunctive relief was abandoned, we will not reinstate it after judgment on appeal.

## V

Finally, Imperial contends that the immunity afforded by Maryland Health Occup. Code Ann., § 14–501(f), which is broader in scope than the immunity granted by the

**1032**

Health Care Improvements Act,* does not apply because it became effective on April 1, 1989, after the operative events in this case, and the 1989 provision did not have retroactive effect.

What Imperial overlooks, however, is the fact that § 14–501(f) was simply a recodification of Maryland Health Occup. Code Ann., § 14–601 (1981), which was itself a recodification of Maryland Ann.Code, Art. 43, § 134A (1976). The 1981 provision contains the same language that is incorporated into the 1989 reenactment and consequently provides immunity with the same scope. Section 14–601(f), as applicable during the relevant time periods in this case, provided:

> *Immunity from civil liability*—A person who acts in good faith and within the scope of jurisdiction of a Medical Review Committee is not civilly liable for any action as a member of the Medical Review Committee or for giving information to, participating in, or contributing to the function of the Medical Review Committee.

Accordingly, we reject the challenge to the district court's application of state law immunity to the state law claims in this case.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED.*

---

* The state provision, which extends to *all civil liability*, and not just to damages liability as provided in the federal act, provides:

> (f) *Immunity from civil liability*—A person shall have the immunity from liability described under § 5–393 of the Courts and Judicial Proceedings Article for any action as a member of the Medical Review Committee or for giving information to, participating in, or contributing to the function of the Medical Review Committee.

The provision incorporated into that section, § 5–393 of the Courts and Judicial Proceedings Article, provides:

> (A) *Definition*—In this section "Medical Review Committee" has the meaning stated in § 14–501 of the Health Occupations Article.
> (B) *In General*—A person who acts in good faith and within the scope of the jurisdiction of a Medical Review Committee is not civilly liable for any action as a member of the Medical Review Committee or for giving information to, participating in, or contributing to the function of the Medical Review Committee.