# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10249

United States Court of Appeals
Fifth Circuit

**FILED**

November 17, 2015

Lyle W. Cayce
Clerk

DAVID O. PETERSON,

Plaintiff - Appellee

v.

BELL HELICOPTER TEXTRON, INCORPORATED,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Opinion on Rehearing

Before JONES and HAYNES, Circuit Judges, and CRONE*, District Judge.

EDITH H. JONES, Circuit Judge:

The court withdraws its opinion filed on June 4, 2015, and substitutes the following, which is amended only as to Part IV:

After losing his job during a reduction-in-force, David Peterson sued his erstwhile employer Bell Helicopter Textron for age discrimination. A jury found that the company harbored some discriminatory motive, but that Peterson would have been fired anyway. After rendering a take-nothing money judgment on the verdict, the district court, acting on Peterson's post-trial

---

* District Judge of the Eastern District of Texas, sitting by designation.

No. 14-10249

motion, enjoined Bell Helicopter from discriminating on the basis of age anywhere, anytime, "especially during reductions in force," and awarded Peterson attorneys' fees.  We reverse.

## I.[1]

David Peterson was a regional sales manager for Bell Helicopter Textron, Inc. ("Bell"), from 1989 through 2008, when he was one of many employees terminated under a reduction-in-force ("RIF") that Bell undertook after it lost an important contract with the Department of the Army.  The Army notified Bell of this bad news on October 16, 2008, and Bell executives met within days to chart the company's course.  On advice of the Human Resources ("HR") and Finance departments, the company decided to set a fixed percentage of employees for layoff in the RIF by applying pre-defined selection criteria, which included annual performance review scores, rankings for the employee's impact on the organization, and any negative performance documentation in the employee's file.   The RIF required eliminating approximately 500 employees, including 19 in Marketing and Sales, Peterson's division.  According to Bell, among Regional Sales Managers in the North American Sales unit, Peterson had the lowest performance scores for 2006 and 2007.  On October 31, 2008, the company formally notified Peterson that his last day would be January 1, 2009.

Peterson disputes that the decision was adopted so straightforwardly. He especially makes much of the corporate blame-shifting and the resulting difficulty he had in determining who made the decision to lay him off. Peterson's version runs something like this.  On October 23, the Executive

---

[1] Because this case dwent to trial and verdict, this court "accepts as true that version of the testimony the jury might reasonably have adopted in reaching its verdict[.]"  *Liberty Mut. Ins. Co. v. Falgoust*, 386 F.2d 248, 253 (5th Cir. 1967).

No. 14-10249

Director of North American Sales called him and said, "Dave, I don't know what they're doing. You're my best guy, but you're on the list to be laid off." This supervisor also allegedly told Peterson that "it's not related to performance at all." At a formal meeting, with a Human Resources representative also present, that same supervisor disclaimed being "privy to how these decisions were made." The HR representative said that she did not know how the decision was made but "it was decided at the top." Peterson specifically elicited assurances that his performance was not one of the reasons.

Peterson contended that, once the lawsuit was underway, "Bell came up with a reason that sounded like performance." During discovery, the company averred that Peterson's termination was based solely on his declining performance, which Peterson argues must be pretextual because his performance ratings, whatever their absolute numbers, were not in decline. Then, in support of its motion for summary judgment, Bell cited the fact that Peterson "had the lowest performance scores for 2006 and 2007." Peterson further alleges that his performance was objectively excellent, quantitative metrics notwithstanding: "[Performance] evaluations are one thing and performance as a helicopter sales person is another." Bell not unreasonably, however, decided to use the former as one metric of the latter.

Peterson sued Bell under the federal Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1), and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code § 21.051(1), as well as on common law contract claims arising from disputed commissions. The district court dismissed the federal age discrimination claim, holding that Peterson failed to create a fact issue to rebut Bell's nondiscriminatory reason for termination. S*ee Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 903 (5th Cir. 2000) (evidence must

3

No. 14-10249

be capable of supporting a "reasonable inference of discrimination"). After the parties resolved the disputes over unpaid commissions, the district court dismissed those as well. Peterson has not noticed an appeal on these or any other issues.

The district court, however, found Peterson's age discrimination claim withstood summary judgment under the TCHRA, which requires evidence only that age was a "motivating factor" for termination.[2] The case went to trial, and the jury answered two questions:[3]

> Question Number 1: Has Mr. Peterson demonstrated by a preponderance of the evidence that age was a motivating factor in Bell Helicopter's decision to terminate Mr. Peterson's employment?

> Question Number 2: Would Bell have terminated Mr. Peterson's employment when it did even in the absence of its consideration of his age?

Following affirmative answers to both questions, the jury could not award damages, so the district court entered final judgment and dismissed Peterson's claim.

Both parties filed post-trial motions. Peterson renewed his motion for judgment as a matter of law, which requested damages and, for the first time, sought declaratory and injunctive relief; he also asked for fees and costs. Bell also moved for judgment as a matter of law as to whether age was a motivating

---

[2] The "motivating factor" standard applies "in all TCHRA unlawful employment practice claims[.]" *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001). But in federal law, a "but-for" causation standard applies to age discrimination claims. *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 175-76, 129 S. Ct. 2343, 2350 (2009).

[3] Shortly before returning the verdict, the jury submitted a question to the judge asking if it could award costs and fees to the plaintiff even if it found that he had failed to prove age discrimination. The district court responded that answering the first question in the negative precluded awarding costs or fees.

No. 14-10249

factor in terminating Peterson. The district court denied almost all of this relief, except that it enjoined Bell from discriminating on the basis of age in determining whom to terminate in future RIFs. The district court relied on a provision of the TCHRA explicitly authorizing injunctions in some circumstances. *See* Tex. Lab. Code § 21.125(b). The court also cited a Title VII case that held injunctive relief mandatory "absent clear and convincing proof of no reasonable probability of further noncompliance with the law[.]" *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 354 (5th Cir. 1977) (citing *EEOC v. Rogers Bros.*, 470 F.2d 965, 966 (5th Cir. 1972)).

The court's injunction states:

> Bell is hereby ENJOINED from henceforth discriminating against any employee because of his or her age, particularly in its decisions regarding which employees to terminate as part of any future reductions-in-force.

The district court then also awarded Peterson attorneys' fees totaling $339,987.50, because he had "prevailed in proving that his termination was motivated in part by unlawful age discrimination." Bell timely appealed.

## II.

On appeal, Bell challenges the district court's injunction on two grounds. The company renews its argument that there was no evidence to support the jury verdict finding discrimination. Without such a finding, the district court would have no basis to award any relief under the TCHRA. Bell's second argument challenges the propriety and scope of the injunction itself and, if successful, obviates this court's need to review the soundness of the jury's verdict.

We need only address injunctive relief. "We review the trial court's granting or denial of permanent injunction for abuse of discretion." *Peaches Entm't Corp. v. Entm't Repertoire Assocs., Inc.*, 62 F.3d 690, 693 (5th Cir. 1995).

No. 14-10249

When "the district court's decision turns on the application of statutes or procedural rules, our review of that interpretation is de novo." *United States v. Holy Land Found. for Relief & Dev.*, 493 F.3d 469, 472 (5th Cir. 2007) (en banc).

## III.

The TCHRA creates liability for discrimination "even if other factors also motivated the practice[.]" Tex. Lab. Code § 21.125(a). Further:

> In a complaint in which a complainant proves a violation under Subsection (a) and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court may grant declaratory relief, injunctive relief except as otherwise provided by this subsection, and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a complaint under Subsection (a), but may not award damages or issue an order requiring an admission, reinstatement, hiring, promotion, or back pay.

*Id.* § 21.125(b). The jury found that age was a motivating factor in Bell's decision, even though the company would have fired Peterson anyway. This is the basis on which the district court entered the injunction and granted attorneys' fees. Bell contends that Peterson waived his right to seek an injunction and, if he did not waive, the district court abused its discretion in awarding injunctive relief. For reasons unique to this case, we agree with both contentions.

Peterson did not specifically request injunctive relief until after final judgment, but his complaint's prayer for relief requests "[a]ny further legal and equitable relief to which Peterson may be justly entitled." Before trial, the district court ordered the parties to "file a trial brief . . . setting out the law applicable to the facts in this case, including the elements of each claim or defense raised[.]" Bell argues that Peterson's failure to include any mention of injunctive relief in his trial brief or to mention injunctive relief at an extensive

pretrial hearing on May 13, 2013 waived the request.  Further, Peterson did not mention injunctive relief during trial or in his initial Fed. R. Civ. P. 50(a) motion for judgment as a matter of law, which itself can result in a party's waiver of the issue.  *See Roman v. Western Mfg.*, 691 F.3d 686, 699 (5th Cir. 2012); *Bay Colony Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1003 (5th Cir. 1997).  Bell unsurprisingly states that the subsequent request for injunctive relief, filed a month after the final judgment was signed, was a complete surprise.

Rejecting Bell's waiver arguments, the district court relied on Fed. Rule of Civ. Proc. 54(c), which provides that "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  The court also cited an unpublished Eleventh Circuit case that held that "the district court has broad discretion in fashioning relief to achieve the broad purposes of" federal antidiscrimination laws.  *Carter v. Diamondback Gold Club, Inc.*, 222 F. App'x 929, 931 (11th Cir. 2007) (citing *Fitzgerald v. Sirloin Stockade, Inc.*, 624 F.2d 945, 957 (10th Cir. 1980)).

The district court is correct to the extent that Rule 54(c) authorizes district courts to grant any appropriate relief following a general prayer by the plaintiff, even if the plaintiff did not specifically seek it, but only where relief is otherwise legally permitted.  Accordingly, this court has held that "[a] party may be awarded the damages established by the pleadings or the facts proven at trial even though only injunctive relief was demanded in the complaint[.]" *Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975).  *Sapp* carefully qualifies Rule 54(c)'s latitude by referring to the other case pleadings or facts proven at trial, and later expresses the caveat that damages not pled are permitted ". . . unless the failure to demand such relief prejudiced the opposing party." *Sapp,* 511 F.2d at 176 n.2.  *See also Int'l Harvester Credit Corp. v. E. Coast Truck,* 547 F.2d 888, 891 (5th Cir. 1977).  More recently, this court explained

that under Rule 54(c), although a plaintiff may seek relief not requested in his complaint or throughout trial, "failure to seek a form of permissible relief in his pleadings may operate to the prejudice of the opposing party when that relief is finally sought at a much later stage of the proceedings. Denial of relief is then also appropriate." *Engel v. Teleprompter Corp.*, 732 F.2d 1238, 1242 (5th Cir. 1984). Conversely, there is no prejudice when "all of the elements justifying such relief were fully established before the district court." *Id.* Were such qualifications not in place, the aims of the Federal Civil Rules to eliminate trial by ambush and afford full and fair litigation of disputed issues would be placed at risk. The discretion afforded by Rule 54(c) thus assumes that a plaintiff's entitlement to relief not specifically pled has been tested adversarially, tried by consent, or at least developed with meaningful notice to the defendant.[4]

This litigation is a paradigm of how Rule 54(c) should not have been employed. In this case, Bell was severely prejudiced by Peterson's post-judgment request for injunctive relief. For the entirety of the litigation, from service of process through final judgment, Bell believed it was only defending against a suit for Peterson's personal money damages. Peterson resorted to requesting equitable relief only after judgment, when it was apparent that he was at risk of not recovering attorneys' fees. Bell explains why the company "was not afforded an opportunity to effectively defend itself." Specifically,

> Bell would be prejudiced by only having available the evidence it put on at trial, which Bell assumed was an action for money damages and did not involve broad-sweeping injunctive relief. Had Bell known that Peterson intended to seek [such] relief, it would have called additional witnesses or elicited additional

---

[4] *See* 10 CHARLES ALAN WRIGHT, ARTHUR MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2662 (4th ed. 2014), at 165 (explaining that Rule 54(c) relief "must be based on what is alleged in the pleadings and justified by plaintiff's proof, which the opposing party has had an opportunity to challenge" (footnote omitted)).

testimony and would have prepared a defense to the claims for relief.

This is a common sense articulation of the prejudice a defendant experiences when the plaintiff seeks a completely new form of relief long after the jury is discharged.[5]

Decisions of other circuits take the same approach to Rule 54(c). In *Alexander v. Riga*, the plaintiffs had actually sought injunctive relief in their complaint. *Alexander*, 208 F.3d 419, 434 (3d Cir. 2000). They did not raise it again through the trial until six days after the verdict. *Id.* The Third Circuit "agree[d] with the District Court that the issue is waived by the failure of counsel to raise the issue of injunctive relief prior to the conclusion of trial." *Id.* In a Fourth Circuit case, the plaintiff never pursued injunctive relief in the district court at all. *Imperial v. Suburban Hosp. Ass'n, Inc.*, 37 F.3d 1026, 1031 (4th Cir. 1994). The court there held that the plaintiff had abandoned its request because injunctive "relief was never pursued even in the face of a motion to dismiss the entire complaint which included that relief." *Id.* As in that case, Peterson serially failed to raise his claim for injunctive relief.[6]

---

[5] Bell's prejudice was magnified here when the district court awarded an injunction not simply in favor of Peterson, but against Bell generally, unlimited in time or location.

[6] Peterson makes a tit-for-tat argument, pointing to the trial court's earlier determination that allowed Bell to add an affirmative defense through amendment with leave of court, only two months before trial. The trial court held that Peterson was not prejudiced because Bell's initial answer put him on notice of the elements of the defense. Peterson argues that he deserves "the same leniency" in construing whether his pleadings gave notice to Bell. Whether this is true or not, the question before us is not how Bell's timely motion was treated, but the propriety of the court's ordering *this* untimely sought relief.

No. 14-10249

In sum, Peterson's failure to seek injunctive relief until after the judgment was entered unduly prejudiced Bell and waived Peterson's claim, which cannot be salvaged by Rule 54(c).[7]

## IV.

The district court also awarded Peterson attorneys' fees under § 21.125(b). Peterson argues that, unlike many other fees provisions, the TCHRA provision is not predicated on prevailing-party status, a legal term of art whose use is well understood. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603, 121 S. Ct. 1835, 1839 (2001). Under a traditional prevailing-party fees provision, "[t]he plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought[.]" *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S. Ct. 566, 573 (1992). Because we vacate the injunction, Peterson has not obtained any "relief on the merits," *id.*, and he would not be a prevailing party according to *Farrar*.

In making his argument, Peterson focuses on the following language: "the court may grant . . . attorney's fees and costs" when "a plaintiff proves a

---

[7] Had we not found the waiver argument compelling, we would have had to address three additional issues, one not briefed by the parties and two raised by Bell. Not briefed by the parties, though implicitly raised by the authorities they cited, is whether this federal court, acting in diversity jurisdiction post-*Erie*, follows our inherent equity jurisprudence or is bound by Texas law regarding the issuance of an injunction in this case. *See, e.g.*, 19 CHARLES ALAN WRIGHT, ARTHUR MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4513 (2d ed. 1996); *see also* David Crump, The Twilight Zone of the Erie Doctrine: Is There Really a Different Choice of Equitable Remedies in the "Court a Block Away"?, 1991 Wis. L. Rev. 1233, 1238 (1991)(describing "an underlying confusion concerning the application of *Erie* to equitable remedies--a confusion that continues to the present day"). The second issue is the absence of Texas law permitting, under § 21.125(b), an injunction that does not help Peterson personally, since he no longer works for Bell, but that nevertheless proscribes Bell from committing age discrimination "particularly" in reduction in force cases. *Compare Tex. Health & Human Servs. Comm'n. v. Wolfe*, No. 03-08-00413-CV, 2010 WL 2789777, at \*9 (Tex. App. July 14, 2010), with *Jones v. Jefferson County*, 15 S.W.3d 206, 213 (Tex. App. 2000). The final issue is whether the injunction issued here was overbroad or unduly vague. *See McClain v. Lufkin Indus.*, 519 F.3d 264, 284 (5th Cir. 2008) (vacating a vague, overbroad injunction against racial discrimination).

violation under Subsection (a) and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor[.]" Tex. Lab. Code § 21.125(b). Peterson argues that this is all the "prevailing" he needs to do in order to receive fees under the provision.

Peterson, however, fails to read this section in the context of the statutory chapter where it reposes. Chapter 21 is entitled "Employment Discrimination." Subchapter "F" of Chapter 21 addresses "Judicial Enforcement" and contains a section on attorneys' fees that requires "prevailing party" status. Tex. Lab. Code § 21.259(a)("In a proceeding *under this chapter* [referencing Chapter 21], a court may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.")(emphasis added). In turn, the Texas Supreme Court has interpreted this provision to require that a party recover some actual relief, whether damages or other relief, and not merely "prevail" on one jury question. *Sw. Bell Mobile Sys., Inc. v. Franco*, 971 S.W.2d 52, 56 (Tex. 1998) (per curiam).[8]

Subchapter C of Chapter 21, where § 21.125 is found, is called "Application; Exception" and provides, as expected, various limitations and applications on relief under Chapter 21. Thus, rather than being a section wholly disconnected from other sections, it must be read *in pari materia* with Subchapter F. *See* Tex. Gov't. Code § 311.026 (Provisions [should] be construed, if possible, so effect is given to each). That approach, in substance, was taken by a Texas intermediate appellate court in *Burgmann Seals Am., Inc. v. Cadenhead*, 135 S.W.3d 854, 858 (Tex. App. 2004). The plaintiff in that

---

[8] The Texas Supreme Court later clarified *Franco* in *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 656 (Tex. 2009) ("we disagree with *Franco* that a plaintiff who recovers no money and receives no equitable relief can be a prevailing party").

case likewise received jury findings that his age was a motivating factor in the denial of promotion, but the employer would have refused promotion anyway. He "was not awarded any actual damages as a result of his age-discrimination claims and was not awarded any non-monetary relief, such as reinstatement or an injunction."  The state appeals court held that allowing such a plaintiff to recover fees under § 21.125 was "contrary to the Supreme Court's holding in *Farrar*."  *Id.*  The *Cadenhead* court concluded that "the effect of *Franco . . .* is to deny [plaintiff] attorney's fees . . . whether [he] is seeking attorney's fees under section 21.259 or section 21.125."  *Cadenhead*, 135 S.W.3d at 861.  *See also Becerra v. Mikeska Bar-B-Q, Inc.*, 2012 Tex. App. LEXIS 2249 (Tex. App. Mar. 22, 2012).  Reading §§ 21.125 and 21.259 together in light of Texas authorities, we conclude that a party must receive a favorable judgment in order to obtain attorneys' fees under Chapter 21 of the Texas Labor Code.  *See also Tex. Health & Human Servs. Comm'n v. Wolfe*, No. 03-08-00413CV, 2010 WL 2789777, at *9 (Tex. App. July 14, 2010)(unpublished)(citing *Cadenhead* and noting that the plaintiff had obtained "meaningful relief").

Peterson urges, however, that Title VII contains a "mixed-motive" attorneys' fee provision that permits the award for a plaintiff who proves discrimination was a motivating factor in an employer's adverse employment decision.  42 U.S.C. § 2000e-5(g)(2)(B).  This court construed the provision to authorize a plaintiff a fee award when he received no other relief.  *Garcia v. City of Houston*, 201 F.3d 672, 678-79 (5th Cir. 2000).  Texas law holds that the federal and state provisions should be interpreted harmoniously, *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 474 (Tex. 2001), and adopts analogous federal case law.  *Specialty Retailers, Inc., v. DeMoranville*, 933 S.W.2d 490,

492 (Tex. 1996). Consequently, Peterson argues, this court must follow *Garcia* as if Texas courts would do so. We disagree.

This logic fails to account for the Texas Supreme Court's more recent decisions requiring a party who seeks fees to have obtained some meaningful relief, and it fails to acknowledge that *Cadenhead* is an on-point Texas authority that this court ordinarily is bound to follow under *Erie*. *Cadenhead* requires the plaintiff to obtain meaningful relief, whether or not he is designated a prevailing party, and regardless "whether [a plaintiff] is seeking attorney's fees under § 21.259 or § 21.125." *Cadenhead*, 135 S.W.3d at 861. State appellate court decisions are controlling on federal courts under *Erie* unless we are "convinced by other persuasive data that the highest court of the state would decide otherwise[.]" *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 418 (5th Cir. 2011)(internal quotation omitted).[9]

## CONCLUSION

Peterson did not seek injunctive relief until his case was effectively concluded. This delay deprived Bell of the ability to present relevant evidence and defend itself from what turned out to be a sweeping and indeterminate injunction. Further, because we vacate the only relief on which Peterson "prevailed," he was not entitled to recover attorneys' fees. The judgment is **REVERSED**.

---

[9] Moreover, it is far from clear that even if we followed this court's Title VII precedent rather than that of the Texas court Peterson would have a better outcome. *Garcia*, upon which Peterson strongly relies, actually offers little solace to Peterson. *Garcia* adopted the Fourth Circuit's test for fees in *Sheppard v. Riverview Nursing Ctr.*, 88 F.3d 1332 (4th Cir. 1996), which in turn applied the principles articulated in *Farrar v. Hobby*, 506 U.S. 103, 109, 113 S. Ct. 566, 571 (1992). Pursuant to these authorities, the degree of the plaintiff's success would have strong bearing on Peterson's recovery of attorney fees. Since he didn't succeed here in any way, his claim to fees should be minimal. *Sheppard*'s rule was designed to prevent "a situation in which a client receives a pyrrhic victory and the lawyers receive a pot of gold." *Sheppard*, 88 F.3d at 1339.