938 F.2d 111
 56 Fair Empl.Prac.Cas. 512,
56 Empl. Prac. Dec. P 40,862, 68 Ed. Law Rep. 975
 Leroy FOSTER, Appellant,
v.
UNIVERSITY OF ARKANSAS; University of Arkansas, Lonoke
County Cooperative Extension Service; Kaneaster Hodges;
Gus Blass II; Roy Thornton; M.A. Jackson; W. Sykes
Harris, Sr.; Frank G. Kumpuris; James B. Blair; Sandra S.
Ledbetter; H.L. Hembree III; Bart R. Lindsey; Lewis E.
Epley, Jr.; Ted Jones, Director of Cooperative Extension
Service; James McCloud, Director of the Lonoke Cooperative
Extension Service, in his official and individual capacity;
Dorothy Rodgers, in her individual and official capacity;
John Schults, in his official and individual capacity, Appellees.
 No. 90-2216.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 11, 1991.
Decided July 5, 1991.
Rehearing and Rehearing En Banc Denied Aug. 19, 1991.
 
 David G. Bowden, Little Rock, Ark., for appellant.
 Fred H. Harrison, Little Rock, Ark., argued, for appellee. Jeffrey A. Bell appeared on brief for appellee, with Fred H. Harrison.
 Before McMILLIAN and MAGILL, Circuit Judges, and BRIGHT, Senior Circuit Judge.
 MAGILL, Circuit Judge.
 
 
 1
 Leroy Foster appeals the judgment of the district court[1] entered on a jury verdict for the defendants in Foster's employment discrimination suit. Foster contends that the verdict was not supported by the evidence and that judgment should be entered in his favor; in the alternative, he requests a new trial because the district court allegedly erred in instructing the jury on Foster's pretext theory. Because there was substantial evidence to support the verdict and because the pretext instruction was correct, we affirm.
 
 I.
 
 2
 In 1975 Leroy Foster began working for the University of Arkansas' Cooperative Extension Service as a county extension agent specializing in agriculture. His program responsibilities included horticulture and 4-H. At first he was supervised by Wayne Rupe, but Rupe later retired, and in 1983 James McLoud[2] became Foster's supervisor. Foster is black; both Rupe and McLoud are white. After McLoud took over, Foster's annual evaluations were markedly lower than they had been under Rupe. In 1987, he received an overall rating of "unacceptable" for the first time. On December 12, 1987, Foster was given notice that his employment would terminate on February 16, 1988. Foster filed a discrimination charge with the EEOC, which issued him a right-to-sue letter. Foster then sued the Cooperative Extension Service, McLoud, two other Extension Service officials, the University, and its Board of Trustees under Title VII and 42 U.S.C. Secs. 1981 and 1983, alleging that he had been fired because of his race and deprived of his property interest in employment without due process of law. The complaint requested reinstatement, backpay, and damages.
 
 
 3
 At trial Foster testified that McLoud had referred to him as "that boy" and had told him that he smelled bad. He further testified that soap had been placed in his office as an implied racial insult. Foster called witnesses who testified that Foster had done a good job in assisting them with their crops. In response to questioning by Foster's attorney, McLoud testified that most of the complaints against Foster were from white farmers, but the defendants did call to the stand one black farmer who also had had problems with Foster. The defendants attempted to establish that Foster's job performance had been substandard via evaluations, written complaints, and testimony from dissatisfied clients of the Extension Service. They also introduced evidence of a written policy that employees could be terminated at will on sixty days' notice.
 
 
 4
 At the close of the plaintiff's case, the defendants unsuccessfully moved for a directed verdict on Foster's Sec. 1981 claims on the ground that Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), bars suits for discriminatory discharge under Sec. 1981. The district court ruled for the defendants on Foster's due process claims, however, on the grounds that he had no property interest in his employment and that his liberty interest had not been infringed, since the reasons for his termination were not publicized. The court also directed a verdict for all individual defendants except McLoud. The case was submitted to the jury on both pretext and mixed-motive theories. At the court's direction, the jurors answered the following interrogatories:
 
 
 5
 1. Has plaintiff proved by a preponderance of the evidence that race was the determining factor in his discharge and that the reasons given for his discharge are pretexts? Answer: No.
 
 
 6
 2A. Has plaintiff proved by a preponderance of the evidence that race was a discernible or motivating factor in his discharge? Answer: Yes.
 
 
 7
 2B. Has defendant proved by a preponderance of the evidence that plaintiff would have been fired in any event, regardless of his race? Answer: Yes.
 
 
 8
 In accordance with the verdict, judgment was entered for the defendants on all claims.[3]
 
 
 9
 Foster moved for judgment n.o.v. or, in the alternative, for a new trial. The district court denied the motion. Foster now appeals the judgment.
 
 II.
 
 10
 Initially, we note that at the time of the trial in this matter, termination of employment on the basis of race was still actionable under Sec. 1981 in the Eighth Circuit. See Hicks v. Brown Group, Inc., 902 F.2d 630 (8th Cir.1990). Since then, this court, sitting en banc, has held that the Supreme Court's decision in Patterson v. McLean Credit Union bars such a cause of action. Taggart v. Jefferson County Child Support Enforcement Unit, 935 F.2d 947, 948 (8th Cir.1991) (en banc).[4] We must still consider Foster's arguments, however, because his claims are founded on Title VII as well as on Sec. 1981.
 
 
 11
 Foster first argues that he is entitled to judgment under the mixed-motive analysis of Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality opinion), because the defendants presented no objective evidence that he would have been fired even if he were white. Since the jury found that his firing was motivated in part by racial animus, the first requirement of Price Waterhouse, he is entitled to judgment as a matter of law if the defendants failed to meet their burden of proving lack of causation.
 
 
 12
 To establish Title VII liability under a mixed-motive theory, the plaintiff must first show that race played a motivating part in the employment decision. Price Waterhouse, 490 U.S. at 258, 109 S.Ct. at 1794. If the plaintiff makes this showing, the defendant may avoid liability only by proving that it would have made the same decision even if it had not taken race into account. Id. at 252, 109 S.Ct. at 1791. This may be done by introducing objective evidence as to the employer's probable decision in the absence of an illegitimate motive. Id. Such evidence is necessary because "could have been fired" is not the same as "would have been fired"; in other words, even if the same decision would have been justified if the plaintiff were white, that does not necessarily mean that the same decision would have been made. See id. Foster contends that the defendants did not meet their burden because they failed to present evidence of the Extension Service's termination policies and practices, such as evidence comparing the treatment of whites and blacks. He points out that there was no evidence at trial about the termination of anyone other than Foster.
 
 
 13
 Such evidence would have been appropriate and helpful, but its absence does not mean that we must overturn the jury's verdict. We must affirm unless reasonable persons could not differ as to the conclusions to be drawn from the evidence, when viewed in the light most favorable to the prevailing party.[5] See Morgan v. Arkansas Gazette, 897 F.2d 945, 948 (8th Cir.1990) (quoting Gilkerson v. Toastmaster, Inc., 770 F.2d 133, 136 (8th Cir.1985)). The defendants introduced evidence of a policy that employees could be fired on sixty days' notice for any reason. Foster's 1987 rating of "unacceptable" supplies objective support for the decision to fire him. No other agent received such a low rating. His evaluations from earlier years also bear witness to the problems that eventually led to his discharge. In addition, the testimony of Rupe and some of the Extension Service's clients, as well as written records of complaints received about Foster by the Extension Service, back up McLoud's testimony that Foster's technical knowledge was deficient and that he had communication problems. Although the defendants did not present direct evidence that white agents who received similar ratings had been fired, there was substantial evidence from which the jury could reasonably have concluded that Foster's job performance was so unsatisfactory that he would have been discharged even without any racial motivation on the part of the defendants.
 
 
 14
 The second issue presented on appeal is the propriety of the district court's instruction on pretext. The court instructed the jury as follows:
 
 
 15
 The first question you should answer is whether plaintiff has proven by a preponderance of the evidence that race was the determining factor in his termination and has also proved that the legitimate reasons for termination offered by the defendants are merely pretexts to disguise the true reason. The term "determining factor" means the sole factor which determined that plaintiff was to be terminated.
 
 
 16
 Foster argues that the court should have instructed the jury that the plaintiff must prove that race was "a determining factor," not "the determining factor," and that the court should not have said that "determining factor" means "sole factor."
 
 
 17
 If Foster were correct, a pretext claim would become indistinguishable from a mixed-motive claim. If race is only a determining factor, there can be others--and then, by definition, the case involves mixed motives. In Price Waterhouse, discussing McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), the Supreme Court said, "McDonald dealt with the question whether the employer's stated reason for its decision was the reason for its action; unlike the case before us today, therefore, McDonald did not involve mixed motives. This difference is decisive in distinguishing this case from those involving 'pretext.' " 490 U.S. at 240 n. 6, 109 S.Ct. at 1785 n. 6 (emphasis in original). See also Bibbs v. Block, 778 F.2d 1318, 1320-21 (8th Cir.1985) (en banc) (premise of pretext case is that only one motive--race or a legitimate consideration, but not both--caused the decision being challenged).[6]
 
 
 18
 Foster completely misunderstands Price Waterhouse on this point. He argues that Justice Brennan's statement, in a discussion about Title VII's causation requirement, that "we know that the words 'because of' [race] [in the language of Title VII] do not mean 'solely because of,' " 490 U.S. at 241, 109 S.Ct. at 1785, mandates the use of "a determining factor." Justice Brennan's statement was made in the context of justifying the plurality's conclusion that Title VII provides a cause of action for discriminatory discharge in mixed-motive cases as well as in pretext cases; he was not discussing the proper analysis in pretext cases.
 
 
 19
 Foster cites several Eighth Circuit cases that predate Price Waterhouse, including Grebin v. Sioux Falls Independent School District No. 49-5, 779 F.2d 18 (8th Cir.1985), and Estes v. Dick Smith Ford, Inc., 856 F.2d 1097 (8th Cir.1988), in which the phrase "a determining factor" was used or quoted. In addition to being superseded by Price Waterhouse, these cases do not support Foster's position. In Grebin, the challenged jury instruction, which was quoted in full, contained the phrase "a determining factor," but that language was not at issue. See 779 F.2d at 20-21 & n. 1. In Estes, the court contrasted "a determining factor," which the court said was the proper language for a pretext case, with "a discernible or motivating factor," which it approved for mixed-motive cases. 856 F.2d at 1102. The relevant difference, however, is between "determining" and "discernible or motivating," not between "a" and "the." The clear implication of the surrounding discussion is that pretext cases are those in which only one motive is involved. See id. (case can involve mixed motives only if race is not a determining factor).
 
 
 20
 The district court's instruction on pretext accurately reflected the law and ensured that the jury would not confuse the pretext and mixed motive issues.
 
 III.
 
 21
 Because there was substantial evidence to support the jury's verdict and because the district court's instruction on pretext was correct, we affirm.
 
 
 
 [1]
 The Honorable G. Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas
 
 
 [2]
 McLoud's name is misspelled as "McCloud" in the caption
 
 
 [3]
 Only the Sec. 1981 and Sec. 1983 claims were submitted to the jury, but the court entered judgment for the defendants on the Title VII claim as well, based on the jury's findings
 
 
 [4]
 All the circuits that have considered the issue have held that Patterson forecloses discriminatory discharge claims under Sec. 1981. See Taggart, at 948, and cases cited therein. In addition, the Supreme Court has vacated Brown Group and remanded it for reconsideration in light of the decision in Taggart, see Brown Group, Inc. v. Hicks, --- U.S. ----, 111 S.Ct. 1299, 113 L.Ed.2d 234 (1991), and has denied certiorari in a Seventh Circuit case holding discriminatory discharge claims are not actionable under Sec. 1981 after Patterson. McKnight v. General Motors Corp., 908 F.2d 104 (7th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991)
 
 
 [5]
 The defendants urge us to apply the Arkansas sufficiency of the evidence test instead of this federal test; that would be proper only if this were a diversity case. See Yeldell v. Tutt, 913 F.2d 533, 539 (8th Cir.1990)
 
 
 [6]
 There is also some doubt as to whether Foster effectively objected to the instruction. Originally, the instruction had been worded as Foster contends it should have been. When the defendants brought up their proposed change and the trial judge said that he was inclined to grant their request, Foster's attorney first said that he believed the original instruction was correct and that Foster was entitled to that instruction, but then added, "I don't think that it really is going to make that much difference to the plaintiff." This comment certainly detracted from the force of his objection, if it did not vitiate the objection entirely. We need not rule on whether Foster waived his objection, however, because the instruction was correct as given