**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-20943
No. 98-21099

DAVID C. GARCIA,

Plaintiff-Appellant, Cross-Appellee,

versus

CITY OF HOUSTON,

Defendant-Appellee, Cross-Appellant.

Appeals from the United States District Court
for the Southern District of Texas

February 9, 2000

Before FARRIS*, WIENER and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This is a consolidated appeal of a final judgment in a Title VII employment race discrimination action against the City of Houston ("City")for its promotion process in selecting SWAT team members for the Houston Police Department ("HPD"). Plaintiff, David Garcia ("Garcia") appeals the jury verdict which found that the City had considered race in its transfer process, but that even

---

* Circuit Judge of the Ninth Circuit, sitting by designation.

without the use of this factor Garcia would not have received the promotion.  The City appeals the district court's award of attorneys' fees to Garcia.  For the following reasons we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Garcia  began working for HPD in 1979.  For most of his years with HPD Garcia was assigned to the Public Information Office's Community Services Division.  In 1992, Garcia applied for a transfer to the HPD SWAT detail.  There were both objective and subjective criteria used to select the new members of the SWAT team.  The objective portion of the selection process included a physical fitness test, obstacle course, and written test with essay.  The top finishers from the objective portion of the process were to then be given psychological screening, background investigations, and personal interviews with SWAT supervisors.  Garcia was selected as one of the 11 finalists, but the four SWAT positions were awarded to two white officers, and two black officers.  Garcia felt that the selection process had been skewed to favor the black applicants, and that his evaluations in the objective and subjective tests were more favorable than those given to one of the white officers and both black officers who were ultimately selected.  In 1993, Garcia filed a complaint with the EEOC alleging race and national origin discrimination in the HPD transfer process.  The EEOC concluded that Garcia was better qualified than three of the non-Hispanics selected, and that HPD had used race and national origin as a selection criteria for SWAT team positions.  Garcia brought suit against the City and the case culminated in a jury trial in April 1998.  The jury found that race and national origin were motivating factors in the City's decision not to transfer Garcia to the SWAT detail.  The jury also found that the City would have made the same employment decision even if the City had not considered Garcia's race.  Finally, the jury found that Garcia should not be

2

awarded compensatory damages. Garcia sought judgment as a matter of law on the "mixed motive question", and requested $61,888 in attorneys' fees and $5,095.88 in costs. The district court denied Garcia's motion for judgment as a matter of law and awarded him a substantially reduced attorneys' fee award of $13, 603, and $4,917.03 in costs.

## DISCUSSION

I.     Mixed-Motive Defense

Garcia argues that the district court erred by entering judgment in the City's favor based on the jury verdict. Specifically, Garcia contends that the City did not meet its burden of proof to establish by a preponderance of the evidence that Garcia would have been denied a transfer to the SWAT team even without the impermissible consideration of race. We give great deference to a jury's verdict when evaluating the sufficiency of the evidence. See Hiltgen v. Sumrall, 47 F.3d 695, 699-700 (5th Cir. 1995). Under this highly deferential standard this court will view all evidence in the light most favorable to the verdict and reverse the jury's verdict only if the evidence points so strongly to one party that reasonable jurors could not arrive at any contrary conclusion. Id.

The Supreme Court established what has become known as the mixed-motive defense in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed. 2d 268 (1989).[1]  In Price

---

[1]  The City also utilizes the McDonell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973) analysis in their brief. However, the present case is a mixed-motive case and thus the burden-shifting analysis of McDonnell Douglas is not applicable. See Wilkerson v. Columbus Separate School District, 985 F.2d 815, 817 (5th Cir. 1993); Browning v. President Riverboat Casino, 139 F.3d 631, 635 (5th Cir. 1998).

Waterhouse, the Court held that an employer would not be held liable[2] if the employer could prove that even if it had not taken into account the impermissible factor of gender, the employer would have come to the same decision. See Price Waterhouse, 490 U.S. at 242, 109 S.Ct at 1786. In order to prove a mixed-motive defense the employer should be able to present some *objective* proof that the same decision would have been made. Id. at 252 (emphasis added). The legitimate reason must have been present at the time the decision was made. Id. It is not enough for the employer to demonstrate that the same decision would have been justified, but instead the employer must show that its legitimate reason standing alone would have produced the same decision. Id. The employer must prove the mixed-motive defense by a preponderance of the evidence. Id. at 253.

In 1991, Congress amended the holding in Price Waterhouse through passage of the Civil Rights Act of 1991. Currently, under Title VII an unlawful employment practice is established when the complaining party establishes that race, color, national origin, or sex was a motivating factor for any employment practice, *even though* other factors also motivated the practice. See 42 U.S.C. § 2000e-2(m); Buchanan v. City of San Antonio, 85 F.3d 196, 200 (5th Cir. 1990). If an employer can demonstrate that it would have taken the same action in the absence of the impermissible motivating factor, the plaintiff's relief is limited to injunctive and declaratory relief, costs, and attorneys' fees. See Buchanan, 85 F.3d at 200 (citing 42 U.S.C. § 2000e-5(g)(2)(B)(I)).

In the present case, Garcia presented evidence that race was a motivating factor in HPD's decision not to promote him. During the trial, two of the defense witnesses, SWAT team supervisors Headley and Walker, both admitted that race was a factor in the selection process. These officers

_____

[2] As discussed later in this section, the portion of the Price Waterhouse holding which found that employer's would not be held liable if they established mixed-motive was abrogated by the Civil Rights Act of 1991.

4

admitted that among the group of candidates who were qualified they considered it to be "a bonus" to transfer some black officers to SWAT. Therefore, because the city used race as a motivating factor in their transfer process, the City had the burden to demonstrate by a preponderance of the evidence, that in 1992 even if the department had not considered race they would have denied Garcia's transfer.

At trial the City claimed that a reason that Garcia was denied the transfer, even without the consideration of race, was that Garcia had insufficient frontline and tactical police experience to justify a transfer to the SWAT detail.[3] Garcia had served as a community service officer for ten years and had made few arrests during that period. The black officers who were selected both testified that they had experience in tactical work such as undercover assignments and the narcotics division.

Garcia claims that this evidence, however, is insufficient to sustain a mixed-motive defense under the Price Waterhouse standard. First, Garcia argues that the City did not produce contemporary, objective evidence of its legitimate motive. Garcia contends that all of the proof put forth by the City was post hoc and subjective. In Foster v. University of Arkansas, 938 F.2d 111, 113 (8th Cir. 1991) our sister circuit found that objective evidence is "necessary" to establish that an employer would have made the same decision. The court found that the employer did put forth this type of objective evidence, including the employer's policy that allowed employees to be fired for any reason with sixty days notice, and the plaintiff's negative employment evaluations. Id. This objective

_____

[3] During Garcia's initial grievance proceedings in 1995 before the Equal Employment Opportunity Commission ("EEOC") the City attempted to establish an affirmative defense of hiring black officers as a bona fide occupational qualification ("BFOQ"), stating that black officers were needed in SWAT to help infiltrate black neighborhoods in undercover operations. The EEOC rejected the BFOQ defense stating that it is not recognized in cases of race discrimination. During trial the City also put forth evidence that needing black officers for undercover work was a non-race based reason for not hiring Garcia.

5

evidence was enough to sustain the jury's finding that the employer proved its mixed-motive defense.

In the present case, the City did present objective evidence regarding Garcia's evaluation that included race neutral reasons for not promoting him. Garcia argues that the objective evidence, namely the test scores, demonstrate that he was better qualified than the two black officers who were transferred, thus making race the only factor in denying his transfer. However, the qualifications for the SWAT team were posted prior to the acceptance of applications. The eight-step selection process included not only the physical and written tests but also evaluations by the officer's current supervisors, interviews with SWAT team leaders, and psychological testing. The process also included a "final evaluation" in which it was stated that the new SWAT team members would be chosen based on how well they performed throughout the "entire process." This evidence demonstrates that in 1992 the City did not intend for the physical and written tests to be the only considerations in the selection of SWAT team members. It is also important to note that Garcia also performed better on the objective tests than one of the white officers who was selected. Therefore the transfer of a lower scoring white officer to SWAT was additional evidence before the jury to show that the desire to transfer black officers was not the only reason the City considered factors other than test scores.

Lieutenant Headley testified that one reason Garcia was not promoted was his lack of frontline tactical police experience. Garcia himself testified that for the past ten years he had been assigned to community service division where his primary duties were giving presentations to civic groups and schools. His only patrol experience during those years was doing overtime patrol work. The City presented contemporary, objective proof that Garcia's assignment to the community service division was considered as a detriment to his promotion to SWAT. At the time of the selection

6

process it was noted in written records that Garcia's community service assignment was "not deemed as an asset." The City also introduced evidence that the one white and two black officers who had lower test scores all had previously been assigned to frontline tactical units such as the narcotics division, special operations, and tactical operations unit. The City also produced evidence that Garcia had applied for a transfer to SWAT twice before and been denied. Also noted in Garcia's evaluation file was that his answers tended to wander during his interview and that he received a mediocre evaluation from his supervisor. Therefore, based on the contemporary, objective evidence presented by the City about the overall process for selection and Garcia's lack of frontline tactical experience the evidence is sufficient to support the jury's verdict.

II.     Attorneys' fees

The district court awarded Garcia $13, 603 in attorneys' fees and $4,917 in costs. The City argues that the district court erred in awarding Garcia attorneys' fees because Garcia received no damages and was denied an injunction. The City further contends that an award of fees in a Title VII case should be measured by the plaintiff's success and that the district court failed to consider the degree of Garcia's success in its attorneys' fees determination. We review an award of attorneys' fees for abuse of discretion, and we accept the factual findings upon which the district court bases its award of fees. Brady v. Fort Bend County, 145 F.3d 691, 716 (5th Cir. 1998) (citations omitted).

Title VII provides that in a case in which the plaintiff proves that race was a motivating factor in the employer's decision, but the employer successfully demonstrates that it would have taken the same action in the absence of the impermissible factor, the court "may grant declaratory judgment, injunctive relief...and attorney's fees and costs." 42 U.S.C. § 2000e-5(g)(2)(B)(I). Therefore, the

7

employer's success in its mixed-motive defense does not in itself bar an award of attorneys' fees.

Among the circuits that have decided this issue all agree that in mixed-motive cases the award of attorneys' fees is a matter left to the discretion of the district court. The most influential case on this question is the Fourth Circuit's decision in Sheppard v. Riverview Nursing Center, 88 F.3d 1332 (4th Cir. 1996). In Sheppard, the Fourth Circuit considered whether an employee should be awarded attorneys' fees in her pregnancy discrimination claim after the jury found mixed-motive and the court denied the employee injunctive relief. The district court granted the employee $40,000 in fees which the Fourth Circuit reversed. Sheppard, 88 F.3d at 1335.

The Fourth Circuit found that based on the Supreme Court's decision in Farrar v. Hobby, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), an award of attorneys' fees in Title VII cases should be proportional to the plaintiff's success. Id. In Farrar, the Supreme Court discussed attorney fees awards in civil rights litigation under 42 U.S.C. § 1988.[4] The Court concluded that attorneys' fees should be awarded to "prevailing parties" who have received some relief on the merits of their claim. See Farrar, 506 U.S. at 109-11. The Court also found that the reasonableness of a fee award should be measured by the degree of success obtained by the party who is requesting the fee award. Id. at 114.

In Sheppard, the Fourth Circuit found that based on the Supreme Court's reasoning in Farrar there are several factors that should inform a district court's exercise of its statutory discretion in

---

[4] The Supreme Court's decision in Farrar, specifically addressed fee awards under 42 U.S.C. § 1988. The court concluded that the differences between §1988 and Title VII did not justify disregarding Farrar. Sheppard, 88 F.3d at 1336. One important distinction, however, between §1988 and Title VII mixed-motive cases is that damages are statutorily prohibited in mixed-motive cases. Therefore, while in Farrar the Supreme Court heavily weighed the amount of damages awarded, in the present case the absence of a damage award should not be dispositive.

awarding attorneys' fees.  Id.  These factors are: 1) reasons why injunctive relief was or was not granted, 2) the public purposes served by resolving the dispute, and 3) whether the mixed-motive case demonstrated a "widespread or intolerable" animus on the part of a defendant, or were the employer's actions justified by the plaintiff's behavior.  Id.  Several other circuits have applied the factors set forth by the Fourth Circuit and have agreed hat Farrar analysis is applicable in Title VII mixed-motive cases.  See Norris v. Sysco Corporation, 191 F.3d 1043, 1905-52 (9th Cir. 1999) (affirming district court's award of fees to employee although employee received no injunctive or declaratory relief)[5]; Akrabawai v. Carnes Company, 152 F.3d 688, 695-96 (7th Cir. 1998) (affirming district court's denial of fees to employee and employer); Canup v. Chipman-Union, 123 F.3d 1440, 1442-43 (11th Cir. 1997) (affirming district court's denial of attorneys' fees to employee who jury found would have been fired for having an affair with a subordinate).

One circuit has disagreed with the Fourth Circuit's reasoning in Sheppard.  The Tenth Circuit in Gudenkauf v. Stauffer Communications, 158 F.3d 1074 (10th Cir. 1998), found that it was inappropriate to apply Farrar to Title VII cases in a manner which denies all but nominal fee recoveries on the basis that a plaintiff fails to recover damages or injunctive relief.  Gudenkauf, 158 F.3d at 1080.  The Tenth Circuit reviewed the legislative history of the Civil Rights Act of 1991 and concluded that Congress intended fee awards to be permitted in most Title VII cases where an impermissible factor was used in an employment decision because Title VII serves the interest of American society by ridding the workplace of the pollutant of employment discrimination.  Id. (citing H.R. Rep. No. 102-40).   The court found that Congress felt that even the smallest victory can

---

[5] The Ninth Circuit stated that although the considerations outlined in Sheppard are useful, they are neither comprehensive, exclusive, nor required in each case.  Norris, 191 F.3d at 1043.

advance that interest, and therefore in mixed-motive cases a plaintiff should be awarded attorneys' fees in all but special circumstances. Id.

First, in the present case it is important to note that in its order awarding attorneys' fees the district court acknowledged the Sheppard factors and applied them to the facts of the present case. See Norris, 191 F.3d at 1052 (suggesting that district court's consideration of Sheppard factors was an indication that district court did not abuse its discretion). As to the first Sheppard factor Garcia was not awarded a prospective injunction because there was no continuing harm. Garcia did not reapply for SWAT detail or ask that his transfer application be reconsidered. However, Garcia does meet the second Sheppard factor because his suit did serve the public purpose of proving that race was a consideration in HPD transfer policies, and this included getting approval to sue HPD from the EEOC. Finally, the City's successful mixed-motive defense was not based on any inappropriate or negative behavior by Garcia. See e.g. Canup, 123 F.3d at 1442 (finding that employer's legitimate reason for firing the employee was the employee's affair with a subordinate). Therefore, in its application of the Sheppard factors the district court properly weighed these factors and did not abuse its discretion. Furthermore, the district court noted the instruction of Farrar and Sheppard that an award should be proportional to the plaintiff's success, and based on that consideration awarded Garcia only one fourth of the fees he requested. Finally, Garcia's case also satisfies the Tenth Circuit's requirements in Gudenkauf, that attorneys' fees be awarded in mixed-motive cases in all but special circumstances, and that the plaintiff's role in helping to end unlawful discrimination in the workplace be weighed heavily.

## Conclusion

We affirm the jury's finding that the City met its burden of proof to establish its mixed

motive defense.  We also affirm the district court's award of attorneys' fees to Garcia.

AFFIRMED.