# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 24, 2010

No. 08-11115

Charles R. Fulbruge III
Clerk

KIM Y SMITH,

Plaintiff-Appellee

v.

XEROX CORP,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-CV-1213

Before REAVLEY, JOLLY, and WIENER, Circuit Judges.

REAVLEY, Circuit Judge:[*]

In the published opinion, we explain the reasons for our judgment affirming the trial court's judgment except for vacating the award of punitive damages. Here we explain the holding that the evidence was sufficient to support Smith's claim of retaliation.

To establish a retaliation claim under Title VII, a plaintiff must prove that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there is a causal link between the protected activity and the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-11115

adverse employment action.[1] We are concerned only with the third element in this case. Xerox argues that the jury could not have found on the evidence presented either that Smith's EEOC complaint was a motivating factor for its decision to terminate her, or that Xerox would not have terminated Smith even absent an improper consideration of the EEOC charge. Xerox moved for judgment as a matter of law (JMOL) at the conclusion of the evidence, but the district court denied the motion.

We review the denial of a JMOL motion de novo. *Bryant v. Compass Group USA, Inc.*[2] A JMOL is warranted when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[3] We consider "all of the evidence from the record, draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence." *E. Tex. Med. Ctr. Reg'l Healthcare Sys. v. Lexington Ins. Co.*[4] We must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*[5]

Xerox argues that we must limit our inquiry to evidence of events occurring after Smith filed her EEOC charge in November 2005. We disagree. Although events following the EEOC complaint may be the most relevant to the

---

[1] *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003).

[2] 413 F.3d 471, 475 (5th Cir. 2005).

[3] F ED. R. CIV. P. 50(a)(1).

[4] 575 F.3d 520, 525 (5th Cir. 2009) (internal quotation marks and citation omitted).

[5] 530 U.S. 133, 150–51, 120 S. Ct. 2097, 2110 (2000). Because this case was fully tried to a jury, our focus is not on parsing evidence into a prima facie case and the constituent parts of the ordinary burden shifting analysis, but rather on whether the evidence supports the jury's ultimate finding of retaliatory intent. *See Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 402 (5th Cir. 2000).

retaliation charge, Smith's allegations cannot be parsed and considered in a vacuum. Instead, all the evidence relevant to Smith's employment and interaction with Jankowski provides background and context for the later termination decision and may be considered if the jury could have drawn from it any inferences supporting its verdict. Viewed in this light, we think the evidence *in toto*, even if not overwhelming, was sufficient to support the retaliation claim.

Viewed in the light most favorable to Smith, the evidence showed that Smith excelled in her position in 2003. During that year she achieved well over 100% of her plan numbers and was rewarded by Xerox with the President's Club award, which goes only to the top eight performing employees in the nation. In 2004, Smith's performance declined, but she still achieved approximately 90% of her plan, and Smith's manager commended her for doing a good job. Then after Jankowski took over and there were significant changes to Smith's territory and the number of agents that she supported, Smith struggled to make her plan numbers, and she had a difficult relationship with Jankowski. The evidence suggests that the relationship was strained from the start when Smith missed a meeting Jankowski scheduled for a Sunday at the beginning of the year prior to a national kickoff meeting in Virginia. Smith was unable to travel from Texas to Virginia in time for the meeting, and Smith believed Jankowski resented her for that.

Smith testified that Jankowski ignored her in conference calls, gave her no feedback, counseling, or coaching, and failed to openly discuss her performance expectations beyond the need to simply "make plan." According to Smith, this situation persisted before she was placed in the Performance Improvement Process even though Xerox's written policies called for an ongoing dialogue between employees and managers. Smith insisted that she was never asked for input about performance expectations and was simply told to "make

plan." Smith's characterization of Jankowski's management style was supported by other evidence showing that Jankowski disliked his employees asking questions. Other employees testified that Jankowski was results- and process-oriented and could be a "hard ass." One fellow employee, Cindy Fowler, testified that Jankowski's style was that he ran the show and he insisted that employees do things his way, often dismissing the ideas of others. She testified that Jankowski's management style was especially "intense" when dealing with women. She had heard it said of Jankowski that he did not work well with female employees, and she admitted that she may have also made that complaint.

One incident showing the relationship between Smith and Jankowski is particularly telling of an animus by Jankowski. One of Jankowski's concerns about Smith's performance was her handling of the so-called "Low Hanging Fruit" procedure, which concerned the facilitation of sales to existing customers. The warning letter that Jankowski issued to Smith specifically pointed out his concern. Smith presented testimony from Steven Webster, a sales manager for one of the Xerox agents, who said that Smith did what she was supposed to do with respect to low hanging fruit. Bonnie Dooley, another Xerox agent that Smith supported, testified that Smith's level of support was "very good" and that she put a lot of effort into the low hanging fruit procedure. But more important, in response to Jankowski's criticism about her handling of low hanging fruit, Smith sent an e-mail to some of her co-workers asking for their help and information on how they handled the procedure. After Jankowski found out about Smith's request, he sent an e-mail message to those employees but apparently copied Smith by mistake. Jankowski then used a procedure to electronically re-call the e-mail so that it could not be viewed by the recipients.

No. 08-11115

However, Smith was able to capture part of the message, which supports a conclusion that Jankowski instructed the other employees not to assist Smith.[6]

Against this backdrop, we turn to the letters Jankowski issued Smith placing her on a 90-day warning period and then on a 60-day probationary period. Both letters informing Smith of these actions were detailed in their descriptions of Smith's deficiencies, including her failure to meet her plan numbers. There was significant dispute at trial as to whether the letters accurately stated any deficiencies other than Smith's falling below her plan numbers, or whether Jankowski provided the level of support and assistance he promised to give to help Smith improve. What was not disputed, however, was that Xerox's policies generally state that counseling and coaching of employees should occur prior to the issuance of formal warning letters, yet Xerox offered no documentation supporting Jankowski's claim that he did counsel Smith before placing her on probation. Joe Villa agreed that Xerox policies for the disciplinary process contemplate a great deal of additional documentation prior to issuance of a letter placing an employee in the Performance Improvement Process, but that such additional documentation was absent in Smith's case.[7]

Smith filed her EEOC complaint alleging discrimination on November 17, 2005. She immediately notified Jankowski about the complaint that same day. Smith's personnel file, which was produced and paginated by Xerox as part of this litigation, shows a fax cover sheet dated November 29, 2005, immediately preceding the written request for Smith's termination. Smith argues that this

---

[6] The full message was never produced during discovery, and Xerox reported during this litigation that Jankowski's laptop computer that was used to send the message had apparently been lost. The jury was certainly entitled to consider this evidence when evaluating the credibility of Xerox and its witnesses.

[7] For example, Xerox policies call for documentation of an employee's unsatisfactory performance before the first warning letter is issued and the employee is placed in the disciplinary process. Smith's personnel file contains no such documentation.

No. 08-11115

document shows Xerox began the termination process only days after the EEOC charge. Xerox argues that there are two identical copies of the November 29, 2005 fax cover sheet in Smith's file. It contends that the copy preceding the termination request was simply an additional copy that was placed out of order in the file. It also contends that the termination request shows that it was made in January 2006 after Smith's probation ended.

The exact nature of the fax transmittal form is unclear because of several inconsistencies on the face of the document and in the record. Xerox is correct that the first page of the termination form is stamped as received on January 4, 2006. The form is dated as signed by Villa on that date and by Jankowski on January 3, 2006. The bottom of the last page of the form contains fax transmittal information showing a fax date of January 4, 2006. This transmittal information is missing from the bottom of the first page of the form, however, leaving one to wonder how or when the first page was transmitted. Xerox is incorrect that the two fax cover sheets that are dated on November 29, 2005, are identical, as a close inspection reveals otherwise.[8] We are unable to conclude whether the November 29, 2005 fax cover sheet transmitted the termination request. We are able to say, however, that the two cover sheets were written at different times with the same date, and the exhibit confusion is left for the jury to resolve. *See Boeing Co. v. Shipman.*[9]

---

[8] The documents bear bates stamp numbers 949 and 953. Both bear the November 29, 2005 date, and both have a box checked "Scan for retention." The check marks on the two documents are not the same. Further, in the comments section of both there is a handwritten message reading, "PIP EE = 80611Y." However, the word "PIP" is different. In Bates number 949, the word is written as "PiP" with a lower case "i," while in Bates number 953 the word appears as "PIP," with an upper case "I."

[9] 411 F.2d 365, 375 (5th Cir. 1969) (en banc) (stating that "it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh competing evidence and inferences"), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997); *see also Evans v. City of Houston*, 246 F.3d 344, 353–54 (5th Cir. 2001) (holding that memorandum notifying employee of demotion and containing contradictory dates as to

6

No. 08-11115

Within a matter of only weeks from Smith's EEOC charge, Jankowski issued a letter of concern to Smith for allegedly making false claims on two expense reports.  Smith claimed reimbursement for a car wash of a company vehicle, even though the receipt turned out to be for her personal vehicle, and she claimed reimbursement for mileage driven for company purposes even though she had also taken a vacation day for that date.  The evidence, again viewed in the light most favorable to Smith, was that this letter could support a charge of expense account fraud, a serious accusation that could be reported to corporate security.  As it turned out, Smith had a reasonable explanation for the claimed expenses.  The car wash was apparently a simple mistake, and the mileage request was arguably compensable.[10]  However, rather than seek Smith's explanation for the expenses, Jankowski issued the letter of concern chastising Smith for her actions.

Most damaging to Xerox with respect to this letter was the testimony of Joe Villa, the human resources manager.  Villa testified that before Jankowski issued such a letter of concern he should have spoken to Smith to obtain her explanation and he should have sought the participation of the human resources department.  Villa agreed on direct examination that Jankowski did not do so.  Smith also presented Villa's deposition testimony about the letter of concern, in which he agreed that if Jankwoski issued the letter without speaking to Smith

---

whether it was sent within probationary period or outside probationary period contributed to fact issue as to whether employee suffered an adverse employment action, and therefore summary judgment was improper).

[10] Part of the mileage was for Smith's travel to a customer and part was for travel to a company sponsored conference.  Charlene Fischer, the Regional Sales Manager for the Central Region, testified that travel to a customer's location could be reimburseable.

it would look like Jankowski was lashing out or retaliating against Smith. Villa's testimony was tantamount to an admission of retaliation.[11]

Xerox argues that the letter of concern is irrelevant because Smith did not claim in her EEOC complaint that it was an adverse employment action. It also contends that the letter is similar to a memorandum that we found insufficient to show pretext in *Bryant*.[12] We disagree. In *Bryant* a memorandum merely memorialized past transgressions by the employee, and we concluded that there simply was no evidence linking the memorandum or the past transgressions with the employee's termination.[13] Here, the letter of concern, sent without prior discussion with Smith, involved *new* allegations of wrongdoing, one of which Smith conceded to be a simple mistake over receipts (the carwash) and the other of which was arguably not error by Smith (the miles). In light of Villa's testimony, the jury was not required to accept that this letter was just a simple memorialization of inaccuracies in an expense report. Following so closely on the heels of Smith's EEOC complaint, the letter was certainly probative of Jankwoski's attitude toward Smith and provided further context for Jankowski's decision to seek Smith's termination. *Cf. Burlington N. & Santa Fe Ry. Co. v. White*.[14]

---

[11] Villa testified on cross-examination by Xerox's counsel that he made a mistake in his deposition insofar as he now recalled—at trial—that Jankwoski did discuss the letter of concern with him before sending it to Smith. He also testified that he now remembered—at trial—that Jankowski said he had already discussed the matter with Smith. The jury obviously was not required to believe such self-serving testimony.

[12] *See Bryant*, 413 F.3d at 476.

[13] *Id.*

[14] 548 U.S. 53, 69, 126 S. Ct. 2405, 2415–16 (2006) (describing totality of circumstances test for determining whether actions are retaliatory in a Title VII case, and noting that "[c]ontext matters").

Relying on *Clark County School District v. Breeden*,[15] Xerox argues that we can draw no inference of causation between Smith's EEOC complaint and her subsequent termination because Smith had been placed on probation months before the termination and it was not required to cancel or freeze disciplinary proceedings. In *Clark County*, the plaintiff was transferred to a new position only one month after filing a lawsuit, and her retaliation claim relied solely on this temporal proximity. The evidence showed, however, that plaintiff's transfer was contemplated by the manager before he knew about the suit. The Supreme Court held that employers "need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."[16] Under *Clark County*, Xerox is correct that it need not have ceased its disciplinary procedures upon learning of Smith's EEOC complaint. But Smith's placement in the disciplinary process prior to her EEOC complaint, while certainly relevant, is not the only consideration. If it were, we could easily conclude from this circumstance alone that Smith's retaliation claim fails. However, the existence of a causal link between protected activity and an adverse employment action is a "highly fact specific" and difficult question. *Nowlin v. Resolution Trust Corp.*[17] We have previously said that indicia of causation may be seen in factors such as: (1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination.[18] Smith, unlike the plaintiff in *Clark*

[15] 532 U.S. 268, 121 S. Ct. 1508 (2001).

[16] *Id.* at 272, 121 S. Ct. at 1511.

[17] 33 F.3d 498, 508 (5th Cir. 1994).

[18] *Id.*

*County*, has not presented evidence only of temporal proximity.   Smith was a long-tenured employee with no disciplinary history prior to 2005 who was subjected not only to termination shortly following the EEOC complaint but also to suspicious new charges of wrongdoing for arguably minor incidents following that complaint. *Cf. Shirley v. Chrysler First, Inc.*[19]

We think the evidence was sufficient for the jury to conclude that Jankowski's animus toward Smith boiled over due to the filing of the EEOC complaint, which provided a motivating factor for the termination.  In sum, Jankowski failed to follow Xerox policies as far as documentation prior to placing Smith in the disciplinary process; the termination process itself was set in motion by the transmittal of the termination request within days of the EEOC charge even though Smith was supposed to be on probation for 60 days; a subsequent letter of concern followed closely after the EEOC charge and leveled new and potentially serious accusations for incidents that were arguably minor and easily explained; and Villa admitted that the letter of concern was suspicious and indicative of retaliatory motivation.

The evidence was also sufficient for the jury to reject Xerox's affirmative defense and find that Xerox would not have made the same termination decision absent an improper consideration of Smith's EEOC complaint.  It is important to remember that Xerox bore the burden of proving this defense and was required to present objective proof that it would have made the same decision. *See Garcia v. City of Houston.*[20]   An employer does not meet its burden of demonstrating its affirmative defense merely by showing that its employment

---

[19] 970 F.2d 39, 43 (5th Cir. 1992) (plaintiff who was fired two months after EEOC complaint was dismissed proved retaliation not only from timing of termination but also by showing she had no disciplinary history over nine-year employment, incidents for which she was fired arose only after EEOC complaint had been filed, and supervisor had made disparaging comments about her EEOC complaint).

[20] 201 F.3d 672, 676 (5th Cir. 2000)

decision would have been justified; instead, it must show that its legitimate reason alone would have resulted in the same decision.[21]  The jury was not required to believe that, absent the EEOC complaint, Xerox would have terminated a 22-year employee with no prior disciplinary problems and who was recently among the top eight performing employees in the country, when Villa testified that a job reassignment would ordinarily be considered for an employee with such a track record and that termination would be an option of last resort.[22]  We therefore conclude that the evidence was sufficient to support Smith's claim of retaliation.

---

[21] *Id.*

[22] When questioned by Smith's counsel, Villa merely testified that he asked Jankowski about the possibility of a job reassignment, but Jankowski said he was "pretty sure" nothing was available.  We do not think such fleeting testimony would compel a jury to conclude that Xerox would have terminated Smith even without considering the EEOC charge.  Villa admitted there was no documentation that options beside termination were considered and that Xerox never mentioned any other option to Smith.  This is not to say that an employer must always consider lesser actions prior to termination.  We hold only that under the circumstances of this case, and where the testimony shows that the employer ordinarily would have considered termination as a last resort, the jury was not required to believe that Xerox would have terminated Smith even without regard for the EEOC complaint.